IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA,

        v.

JOHN DOE
    aka "Jimmy Earl McNeill"
    aka "Michael Gerard Simpson,"

        Defendant.

Criminal Number
3:21-CR-385 (MAD)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Government's Motion to Exclude Evidence or Argument
Concerning the Defendant's Purported Insanity or the Existence of a
Mental Disease, Defect, or Condition of the Defendant Bearing on the Issue of Guilt**

During the defense opening statement and questioning of a government witness from the Social Security Administration ("SSA") the defense appeared to be raising an issue concerning the defendant's mental state. Among other things, the defense in its opening statement referred to an asserted stay by the defendant in a psychiatric institution.[1] The defense should be precluded from offering evidence or making arguments that the defendant has a mental disease or defect that renders him insane within the meaning of 18 U.S.C. § 17 because the defense has not provided notice of an insanity defense. It also should be precluded from making a "back-door" insanity defense that runs afoul of the principles of the Insanity Defense Reform Act ("IDRA") which was designed to limit and clarify the situations where a defendant can use mental disease or defect as a defense.

---

[1] Defense counsel advised the Court that the Social Security Record admitted as government Exhibit 3 includes a "redetermination" in 2015 where the defendant, posing as Jimmy Earl McNeill, apparently claimed to have been in a psychiatric institution for the past year. The reference to the defendant (posing as Jimmy Earl McNeill) claiming to have been in a psychiatric institution occurred as far back as 2005 (and possibly earlier in the paper record that is no longer available) and then was apparently simply copied in subsequent redeterminations in later years.

1

The IDRA provides in relevant part: "It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts.  <u>Mental disease or defect does not otherwise constitute a defense</u>." 18 U.S.C. § 17(a) (emphasis added). "The defendant has the burden of proving an insanity defense by clear and convincing evidence." *Id.* § 17(b).

> In enacting the IDRA, Congress sought to place a number of limitations on a criminal defendant's ability to introduce mental health evidence, including: (1) the elimination of any form of legal excuse based on a defendant's lack of volitional control, (2) elimination of affirmative defenses such as "diminished capacity," "diminished responsibility," "mitigation," and "justification," (3) limitation on the use of expert psychological testimony on ultimate legal issues, (4) alteration of the burden of proof to require the defendant to prove the affirmative defense of insanity by clear and convincing evidence, and (5) creation of a special verdict of "not guilty by reason of insanity," which triggers federal civil commitment proceedings.

*United States v. Jones*, 16-cr-553, 2018 WL 1115778, at *4 (S.D.N.Y. Feb. 2, 2018) (citing and quoting *United States v. Cameron*, 907 F.2d 1051, 1061 (11th Cir. 1990); *United States v. Sabir*, No. 05-cr-673 (LAP), 2007 WL 1373184, at *5 (S.D.N.Y. May 10, 2007); *United States v. Ray*, -- F. Supp. 3d --, 2022 WL 292800, at *12 (S.D.N.Y. Feb 1, 2022).

 The defendant has not provided the required notice of its intent to rely on a defense of insanity under Rule 12.2(a) and so it would be improper for the defense to introduce any evidence in support of such a defense whether through its own witnesses or through cross examination of the government's witnesses.

Although there are certain circumstances where a defendant who does not raise an insanity defense can still offer mental health evidence to negate *mens rea*, if the defendant intends to rely upon an expert to do so he must first provide notice pursuant to Federal Rule of Criminal Procedure

2

12.2(b) (Notice of Expert Evidence of a Mental Condition). No such notice has been provided here under Rule 12.2(b) either. Additionally, before admitting such evidence courts must satisfy themselves that the evidence "would, if believed, 'support a legally acceptable theory of lack of *mens rea*.'" *Id.* (quoting *United States v. Dupre*, 339 F. Supp. 2d 534, 541 (S.D.N.Y. 2004) (quoting *Cameron*, 907 F.2d at 1067) ("The proper focus should be on the proffered link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case."). Courts are skeptical of proffered evidence of a defendant's mental condition meant to rebut the element of intent because of the "strong danger of misuse" of such evidence in this area and the risk that introducing the evidence will result in the resurrection of precisely the kinds of defenses that the IDRA was enacted to prohibit. *United States v. Pohlot*, 827 F.2d 889, 900 (3d Cir. 1987); *Cameron*, 907 F.2d at 1066.

Under these authorities, "it is not enough for a defendant to show that his psychiatric condition adversely affected his state of mind during the relevant time period or that his disorder caused him to commit the actions that form the basis of a charge." *United States v. Sabir*, 2007 WL 1373184, at *6 (S.D.N.Y 2007); *see also United States v. Mezvinsky*, 206 F. Supp.2d 661, 672-73 (E.D. Pa. 2002) ("To be sure, [the defendant's] experts are prepared to testify at length that [the defendant's] [bipolar disorder] resulted in 'poor judgment' and 'bad choices,' but none is in a position to state that, at the relevant time, [the defendant] did not have the capacity to deceive"); *United States v. Griffin*, No. 94 Cr. 631, 1996 WL 140073, at *10 (S.D.N.Y. Mar. 27, 1996) ("This conclusion [that the defendant could easily be controlled and readily influenced by certain individuals] presents a form of 'volitional control' defense based on [the defendant's] alleged inability to conform his conduct to the requirements of the law, the type of insanity defense that was specifically excluded by [18 U.S.C. §] 17(a).").

Before allowing any such evidence, courts have required the defendant to demonstrate in advance of trial that there is a direct link between such evidence and the specific *mens rea* that the government must prove. *See United States v. Sabir*, 2007 WL 1373184, at *5 (S.D.N.Y. 2007) ("[S]uch evidence is permitted only in rare and narrowly defined circumstances because of the high likelihood that it will result in the resurrection of precisely the kinds of defenses that the IDRA was enacted to prohibit."); *United States v. Dupre*, 339 F. Supp. 2d 534, 539 (S.D.N.Y. 2004) ("Given that defendants are not foreclosed from presenting mental disease evidence towards the *mens rea* element of a charged offense, it is necessary to identify whether any elements of the charged offenses require the Government to prove intent in a way that could be meaningfully refuted by the type of mental disease evidence [the defendant] seeks to present."); *United States v. Brown*, 326 F.3d 1143, 1147 (10th Cir. 2003) ("The admission of such evidence will depend upon whether the defendant clearly demonstrates how such evidence would negate intent rather than 'merely present a dangerously confusing theory of defense more akin to justification and excuse.'") (quoting *Cameron*, 907 F.2d at 1067); *United States v. Baxt*, 74 F.Supp.2d 436, 440 (D.N.J. 1999) ("Conclusory statements by a defendant about the link between psychiatric evidence and the defendant's *mens rea* at the time the alleged crime was committed do not render the evidence admissible."). Moreover, the "burden of showing that proffered testimony is offered to negate the *mens rea* element of a crime and not in support of some other theory falls squarely on the defendant." *Sabir*, 2007 WL 1373184 at *6 (quoting *Baxt*, 74 F.Supp.2d at 441).

Evidence of any mental condition or limitation the defendant may have, "even if relevant and helpful under Rules 401 and 702, is excluded under Rule 403 where its capacity to mislead and confuse the jury substantially outweighs whatever limited probative value it may have." *Sabir*, 2007 WL 1373184, at *7. This is so because "[p]sychiatrists are capable of supplying elastic

4

descriptions of mental states that appear to but do not truly negate the legal requirements of mens rea." *Pohlot*, 827 F.2d at 890. *See also Dupre*, 462 F.3d at 138 (affirming the district court's exclusion of expert testimony under Rule 403 because the psychological evidence that the defendant's pervasive religious beliefs interfered with her ability to form the required intent for the charged fraud offenses was, *inter alia*, likely to confuse and mislead the jury); *United States v. Schneider*, 111 F.3d 197, 202-03 (1st Cir. 1997) (affirming the district court's exclusion of expert testimony showing the defendant had "impaired" judgment under Rule 403 because it "could easily mislead the jury into thinking that such a medical condition amounts to temporary insanity or ameliorates the offense"); *Mezvinksy*, 206 F. Supp. 2d at 674 ("To the extent [defendant's] proffered testimony as to his bipolar condition might slip through a crack in the *Pohlot* door, it simply cannot do so through the Rule 403 door given the very high likelihood of its misleading the jury into forbidden territory.").

     Here, the defense cannot introduce any expert testimony of a mental disease or defect or other mental condition of the defendant bearing on the issue of guilt because no notice under Rule 12.2(b) was made. Nor would it be proper for the defense to cross examine the government's lay witnesses about the defendant's mental diseases or defects because of the capacity of such testimony to mislead and confuse the jury substantially outweighs whatever limited probative value it may have. Although some of the government's witnesses might be aware of the defendant's diagnosed conditions, none of them is qualified to explain how any diagnosis was reached, the associated symptoms of any diagnosis, or the relative severity of any diagnosis in the defendant's case. Without that information, the jury is highly likely to be misled and confused concerning how the evidence it hears about the defendant's mental conditions is supposed to inform its judgment of whether the government has proved the elements of the charges. Thus, even

assuming *arguendo* that it is ever proper for a defendant to offer evidence of a mental disease or defect bearing on the issue of guilt without an expert witness, here the Court should preclude such evidence.

CARLA B. FREEDMAN<br>
United States Attorney

By: */s/ Adrian LaRochelle*

Adrian LaRochelle (Bar Roll No. 701266)
Michael D. Gadarian (Bar Roll No. 517198)
Assistant United States Attorneys