IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | Criminal No.    3:21-CR-385 (MAD) |
| ) | |
| **v.** ) | **GOVERNMENT'S SENTENCING** |
| ) | **MEMORANDUM** |
| **JOHN DOE,** ) | |
|     aka "Jimmy Earl McNeill"  ) | |
|     aka "Michael Gerard Simpson" ) | |
| ) | |
| **Defendant.** ) | |

The government respectfully requests that the Court sentence the defendant principally to a guideline imprisonment term of 65 months and a three-year term of supervised release. Additionally, the government requests that the Court order the defendant to pay full restitution to the Social Security Administration (SSA) in the amount of $249,811.93 and to New York State in the amount of $572,836.43. Such a sentence would be sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. § 3553. For at least 23 years the defendant assumed the identity of a disabled veteran to steal Supplemental Security Income and other benefits totaling $822,648.36.

### INTRODUCTION AND FACTUAL BACKGROUND

On May 19, 2022, the defendant was found guilty after a jury trial of Counts 1, 3, and 4 of Superseding Indictment 21-CR-385 which had charged the defendant with aggravated identity theft (Counts 1 and 3) and misuse of a Social Security number (Count 4). The facts proven at trial, taken in the light most favorable to the government, established that the defendant completely assumed the identity of a disabled veteran named Jimmy Earl McNeill for more than two decades.[1]

---

[1] The United States adopts the facts as set forth in the Presentence Investigation Report ("PSIR") prepared by the United States Probation Office and filed on October 24, 2022. *See* PSIR, ECF No. 67 at ¶¶ 1–21

1

During that time, the defendant received over $800,000 of public benefits to which he was not entitled. The defendant engaged in this conduct after previously using the identity of Michael Gerard Simpson. The defendant's conduct not only cost the federal and state government money, but it also harmed the real Jimmy Earl McNeill in at least two ways. First, as the defendant knew, the real Jimmy Earl McNeill had problems obtaining Veterans Affairs benefits to which he was entitled because the defendant was obtaining fraudulent social security benefits using the same identity. Second, the real Jimmy Earl McNeill now has a criminal history entangled with the defendant's criminal history. Although the real Jimmy Earl McNeill might be able to navigate around that problem with enough effort, it will certainly be a burden for the rest of his life.

## APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

The government agrees with the PSIR's recitation of the applicable statutory sentencing requirements, criminal history calculation, and guidelines scoring.

**1.      Statutory Maximum and Minimum Sentences**

   **a.      Misuse of a Social Security Number [42 U.S.C. § 408(a)(7)(B)]**

The defendant's conviction on Count 4 for misuse of a Social Security number subjects him to a statutory maximum term of five years of imprisonment. 42 U.S.C. § 408(a)(1). Conviction on Count 4 also subjects the defendant to a maximum statutory fine of $250,000, pursuant to 18 U.S.C. § 3571(b)(3), and a maximum term of supervised release of up to three years, pursuant to 18 U.S.C. § 3583(b)(2). A special assessment of $100 shall also be imposed. 18 U.S.C. § 3013(2)(a).

   **b.      Aggravated Identity Theft [18 U.S.C. § 1028A(a)(1)]**

The defendant's convictions on Counts 1 and 3 for aggravated identity theft subject him to a mandatory two-year term of imprisonment for each count which shall be imposed consecutively

to any term of imprisonment imposed on Count 4. 18 U.S.C. § 1028A(a)(1). Convictions on Counts 1 and 3 also subject the defendant to a maximum statutory fine of $250,000, pursuant to 18 U.S.C. § 3571(b)(3), and a maximum term of supervised release of up to one year, pursuant to 18 U.S.C. § 3583(b)(3). A special assessment of $100 shall also be imposed per count of conviction. 18 U.S.C. § 3013(2)(a). At the discretion of the court, the sentences of imprisonment imposed for Counts 1 and 3 may run concurrently or consecutively, in whole or in part, with each other, but, as noted above, must be imposed consecutively to any sentence of imprisonment imposed on Count 4. 18 U.S.C. §§ 1028A(a)(1) & 1028A(b).

2. **Guidelines Provisions**

   a. **Base Offense Level**

   Under the Sentencing Guidelines, the "base offense level" for the defendant's conviction on Count 4 is six (6). U.S.S.G. § 2B1.1(a)(2); PSIR ¶ 26. Counts 1 and 3 are excluded from determining the offense level pursuant to §3D1.1(b)(2), which specifically excludes any count of conviction under 18 U.S.C. § 1028A.

   b. **Actual and Intended Loss**

   As outlined in the PSIR, the defendant is accountable for $822,648.36 in actual and intended loss associated with the offenses of conviction, resulting in a 14-level increase to the offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(H). PSIR ¶ 27.

   c. **Adjusted Offense Level**

   Based on a base offense level of six (6) and an increase of fourteen (14) levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(H), the adjusted offense level is twenty (20). PSIR ¶ 34.

    **d.**    **Criminal History Category**

According to the PSIR, the defendant's criminal history category is I. PSIR ¶ 45. Unfortunately, because the defendant has yet to disclose his true identity, neither the United States Probation Office nor the Court can be confident the criminal history outlined in the PSIR represents the true nature or extent of the defendant's criminal history. However, because the government has no additional information regarding the defendant's criminal history beyond what is outlined in the PSIR, the government has no independent basis upon which to object to the PSIR's calculation of the defendant's criminal history category.

    **e.**    **Guidelines Range and Sentence**

The PSIR concludes that the total adjusted offense level is 20 and the defendant's criminal history category is I. PSIR ¶ 61. Accordingly, absent any departures, the federal sentencing guidelines advise that the defendant should receive a term of imprisonment to last between 33 and 41 months on Count 4, to run consecutive to the mandatory two-year terms of imprisonment for Counts 1 and 3 pursuant to 18 U.S.C. § 1028A(a)(1). U.S.S.G. Ch. 5, Pt. A; PSIR ¶ 61. Furthermore, the Guidelines direct that a term of supervised release last between one and three years may be imposed on Count 4, and up to one year on Counts 1 and 3. U.S.S.G. § 5D1.2(a)(2) and (a)(3), PSIR ¶ 63. Finally, the fine range for this offense is $15,000 to $150,000. U.S.S.G. § 5E1.2(c)(3); PSIR ¶ 70.

    **f.**    **Restitution**

As outlined in the PSIR, pursuant to 18 U.S.C. § 3663A, restitution in the total amount of $822,648.36 shall be ordered in this case. Restitution is due and owing to the Social Security Administration in the amount of $249,811.93, and to New York State in the amount of $572,836.43. PSIR ¶ 72.

## GOVERNMENT'S SENTENCING RECOMMENDATION

As referenced above, the defendant did not simply commit aggravated identity theft by using the identity of another person during and in relation to a one-off criminal offense. Instead, the defendant fully assumed the identity of a homeless United States veteran for over 23 years to fraudulently obtain Supplemental Security Income and other governmental benefits totaling over $822,000.00, to which the defendant was not entitled. Perhaps more troubling, however, is that the defendant has yet to disclose his true identity even to assist the probation department in preparing the PSIR. This means that no one beyond the defendant himself can determine with confidence the defendant's true background, including the true extent of his criminal history. What the government does know and what was proven at trial, however, is that the defendant's criminal conduct in this case is not the first time the defendant has unlawfully utilized the identity of another person. Indeed, the proof at trial showed that the defendant used the identity of another person (Michael Gerard Simpson) on at least two occasions during encounters with law enforcement in the late 1980s. This not only demonstrates that the defendant understood the full extent of his actions in this case but also that the defendant has gone to great lengths to conceal his true identity for even longer than the 23 years he impersonated Jimmy Earl McNeill. In fashioning the appropriate sentence to impose for the defendant's crimes of conviction, the Court should consider the reason for the defendant's decades-long deception and the fact that the defendant has yet to accept responsibility or show any apparent remorse for it.

Based on all of the information before the Court, the government respectfully requests that the Court sentence the defendant to a term of imprisonment of 41 months on Count 4, while running the mandatory 24-month sentences of imprisonment for Counts 1 and 3 concurrent with one another for a total term of imprisonment of 65 months. This would be a guidelines sentence.

The government further requests the Court issue an order of restitution in the amount of $822,648.36, representing the outstanding loss to the Social Security Administration of $249,811.93, and to New York State of $572,836.43.

The government submits that the recommended sentence adequately reflects the statutory factors to be considered under 18 U.S.C. § 3553(a) in imposing a sentence, particularly:

(1) the nature and circumstances of the offense and the characteristics of the defendant;
(2) the need for the sentence imposed—
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct; [and]
 (C) to protect the public from further crimes of the defendant.

The sentence recommended within the Guideline range is sufficient, but not greater than necessary to comply with the sentencing purposes in 18 U.S.C. § 3553(a)(2). "[I]n the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 89 (2007); *see*, *e.g.*, *Gall v. United States*, 552 U.S. 38, 46 (2007) (Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Moreover, within-guidelines sentences promote Congress's goal in enacting the Sentencing Reform Act – "to diminish unwarranted sentencing disparity." *Rita v. United States*, 551 U.S. 338, 354 (2007).

The government reserves the right to respond to defense arguments raised for the first time after filing of this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the applicable guidelines range on a ground not previously identified by the parties or in the PSIR, the parties are entitled to notice and an opportunity to respond. Fed R. Crim. P. 32(i)(1)(c) and 32(h).

Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

Respectfully submitted this 10 November 2022,

        CARLA B. FREEDMAN
        United States Attorney

        */s/ Adrian S. LaRochelle*
By:   Adrian S. LaRochelle (Bar Roll No. 701266)
        Michael D. Gadarian (Bar Roll No. 517198)
        Assistant United States Attorneys